TITLE INS. ASS'N et al.

v.

BOARD OF INS. COM'RS et al.

No. 10187.

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1954.

Rehearing Denied Feb. 10, 1954.

T. D. Jeffrey, Marion Fowler, Clint Little, Austin, De Lange, Hudspeth & Pitman, Houston, for appellants.

John Ben Shepperd, Atty. Gen., V. F. Taylor, Asst. Atty. Gen., Austin, for Board on Insurance Commissioners and State of Texas.

Norman, Rounsaville & Hassell, Jacksonville, for Southwestern and Austin Title Companies.

HUGHES, Justice.

The Title Insurance Association of Texas and numerous title insurance and abstract companies, appellants, sued the Board of Insurance Commissioners of Texas, its members in their official capacities, the Southwestern Title and Guaranty Company and the Austin Title Company for the purpose of enjoining the Board from approving an agency contract between the two corporate defendants and to enjoin such defendants from illegally transacting a title guaranty business in Travis County. Declaratory judgment was also sought defining and declaring the rights of the parties in the premises.

Defendants filed pleas in abatement, the Board contending as to it that the suit was against the State and without its permission and that appellants have no justiciable interest in the alleged controversy and that the suit, if entitled to be maintained at all, was prematurely brought because the Board had not taken any action with respect to the subject contract.

These pleas in abatement were sustained and the suit dismissed.

After the cause reached this Court we overruled appellees' Motions to dismiss this appeal because appellants' briefs were not filed timely.

It has also been made known to this Court, by admissions of the parties, that since the judgment below was rendered the Board has approved the contract between the corporate appellees. The case, insofar as it seeks to enjoin such approval is, therefore, moot and to such extent should be dismissed. Poole v. Giles, Tex.Sup., 248 S.W.2d 464.

This holding also disposes of the necessity of determining whether or not this is a suit against the State since no cause of action, except that which has become moot, is asserted against the Board and the judgment of dismissal as to it is proper.

Before discussing the plea in abatement further we believe it appropriate to elaborate upon the merits of the suit as gathered from the pleadings of appellants.

Some of appellants are engaged in the title guaranty business and others own and operate an abstract plant in Travis County, each of the latter having a contract with a title insurance company for the issuance of title insurance in Travis County. Such contracts must be approved by the Board of Insurance Commissioners as is provid-

ed in Art. 9.22 of the Texas Insurance Code, V.A.T.S., which we quote:

"No commissions, rebates, discounts, or other device shall be paid, allowed or permitted by any company, domestic or foreign, doing the business provided for in this chapter, relating to title policies or underwriting contracts; provided this shall not prevent any title company from appointing as its representative in any county any person, firm or corporation owning and operating an abstract plant in such county and making such arrangements for division of premiums as may be approved by the Board."

The appellant abstract companies allege that they have, at great expense, acquired, built and now own and operate and maintain abstract plants in Travis County; that they have complied with all rules and laws relating to the transaction of title insurance and guaranty business in Travis County as agents for named title insurance companies under contracts duly approved by the Board of Insurance Commissioners.

Appellants alleged that appellee Austin Title Company "does not now own or operate an abstract plant in Travis County, Texas, nor any such abstract plant as is contemplated and required by * * * Art. 9.22."

The remaining allegations are to the effect that if the contract between the two corporate appellees is approved by the Board and such appellees are thereby authorized to and do engage in the title guaranty business in Travis County that appellants, as well as the general public, will suffer irreparable injury as a result of such "illegal competition." As to appellants the specific injury alleged is that they will lose their proportionate share of title guaranty business done by corporate appellees.

In their brief corporate appellees refer to appellants as their "competitors."

In support of the contention that appellants were not authorized to bring this suit Art. 1.19 of the Insurance Code is cited and relied upon. This article in part provides that "No action shall be brought or maintained by any person other than the Board * * * to enjoin, restrain or interfere with the prosecution of the business of any such insurance company organized under the laws of this State."

■ In our opinion this article has no application here because of Art. 9.27, Chap. 9 of the Insurance Code relating to Title Insurance Companies provides that no provision of the Insurance Code, except Chapter 9, shall apply to title insurance companies or business unless expressly mentioned and we find no such mention as to Art. 1.19.

This then relegates us to general law to determine whether or not appellants have a justiciable interest sufficient to maintain their suit against the corporate appellees.

Appellees rely principally, if not entirely, upon the case of Corchine v. Henderson, 70 S.W.2d 766, Dallas Court of Civil Appeals, in which it was held that business competitors (junk yards) had insufficient property rights in anticipated business to enjoin penal violation of a Sunday closing law. A similar holding was made by the San Antonio Court of Civil Appeals in York v. Yzaguairre, 31 Tex.Civ.App. 26, 71 S.W. 563, writ of error refused (barbers).

We consider the case of Featherstone v. Independent Service Station Ass'n of Texas, Tex.Civ.App., 10 S.W.2d 124, 128, also by the Dallas Court, to be based upon sounder reasoning and more solid authority than the two cases above noted. In that case the Court reversed the trial court and granted an injunction enjoining a competitor of plaintiff (service stations) from enticing away his customers through the use of a lottery, the Court saying:

"We are of the opinion that plaintiff's business and his right to conduct the same constitute property that a court of equity will protect from unlawful interference or injury. The correctness of this proposition has been announced so often and by so many courts that it ought not now to be considered an open question. While it is true a dealer has

no such interest in the future trade, that is, in possible customers, as would justify an appeal to a court of equity, to restrain a competitor from doing what is perfectly legal, to advertise and attract customers to his own business, although such conduct may result in a corresponding loss to one engaged in a similar business, yet a competitor may ask for the restraint of acts and conduct prohibited by law, that unreasonably interfere with, divert patrons from, and injure his business."

In Davidson v. Sadler, 23 Tex.Civ.App. 600, 57 S.W. 54, writ dism., this Court sustained an injunction in behalf of a public weigher against unlawful private weighers who were weighing cotton for compensation and thus depriving the official weigher of his fees.

In Olsen v. Smith, 68 S.W. 320, San Antonio Court of Civil Appeals, writ refused, the Court sustained an injunction in behalf of licensed pilots against competing unlawful unlicensed pilots. The holding of the Galveston Court in a companion case was to the same effect. Peterson v. Smith, 30 Tex.Civ.App. 139, 69 S.W. 542.

In 28 Am.Jur., § 155, p. 346, what we consider to be the sound and prevailing rule is stated to be:

"In application of the principle that equity will interfere by injunction to prevent the commission of acts, even though they are criminal or penal, which injuriously affect the complainant's property rights or interests, equity will in a proper case restrain the use of criminal means or practices in business or trade competition. Injunctive relief in such cases is predicated upon the right of an individual or a corporation to carry on a business or exercise a franchise without the competition of illegal and criminal acts."

Many cases are cited to support the text. Whether there is any conflict among the Texas decisions above discussed we need not consider because in the two Sunday closing cases a criminal statute was involved where as in this case there is no criminal statute to deter corporate appellees or to protect appellants.

We believe the case of Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 237, 73 L.Ed. 483, to present a close analogy. In that case the Court was considering an Oklahoma statute which declared cotton gins to be a public utility and required a showing of public necessity in order to obtain an operating permit, 47 O.S. 1951 § 41 et seq. The State Corporation Commission granted a permit for a gin in Durant without regard to public necessity and a Durant operator of another gin, under proper permit, sued to enjoin operation of the gin under the illegal permit. The Court in holding that the injunction should have been granted said, in part:

"Appellant, having complied with all the provisions of the statute, acquired a right to operate a gin in the city of Durant by valid grant from the state acting through the corporation commission. While the right thus acquired does not preclude the state from making similar valid grants to others, it is, nevertheless, exclusive against any person attempting to operate a gin without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a void permit; in either of which events the owner may resort to a court of equity to restrain the illegal operation upon the ground that such operation is an injurious invasion of his property rights. * * *

"The injury threatened by such an invasion is the impairment of the owner's business, for which there is no adequate remedy at law."

The business of title insurance is one affected by public use, is of public interest and is subject to reasonable legislative control. Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372.

In the exercise of this control the Legislature has provided that a title company representative in a county must own and operate an abstract plant in such coun-

ty. Any representative lacking this qualification is an illegal representative and any permit authorizing such illegal representative to act for his principal and to divide premiums is invalid and operation thereunder is, in our opinion, an unlawful invasion of a competitor's property rights. Frost, supra.

We believe appellants are entitled to an opportunity to prove their allegations and to appropriate relief if they are proved.

As to the Board the judgment of dismissal is affirmed but as to the corporate appellees this cause is reversed and remanded.